JoAnn Corson Bacheller
Registered Diplomate Reporter
Certified Realtime Reporter
P. O. Box 1424
Billings, Montana 59103-1424
406/247-4477 office
406/247-7008 fax
joann_bacheller@mtd.uscourts.gov

United States Court Reporter

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-06-133-BLG-RFC |
| Plaintiff, | ) | |
| vs. | ) | **VOLUME 3 EXCERPT** |
| | ) | **TRANSCRIPT OF JURY TRIAL** |
| RACHEL STRANGE OWL, | ) | |
| Defendant. | ) | REBUTTAL TESTIMONY OF |
| _____ | ) | MR. STACEY SMIEDALA |

**BEFORE THE HONORABLE RICHARD F. CEBULL**
**CHIEF UNITED STATES DISTRICT COURT JUDGE**
**FOR THE DISTRICT OF MONTANA**

James F. Battin United States Courthouse
316 North 26th Street
Billings, Montana 59101
Thursday, February 21, 2008
15:49:30 to 15:56:55

Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

1                          **APPEARANCES**

2  For the Plaintiff:              MS. LORI HARPER SUEK
                                   Assistant U.S. Attorney
3                                  P. O. Box 1478
                                   Billings, Montana 59103
4
   For the Defendant:              MR. THOMAS J. PARDY
5                                  Attorney at Law
                                   P.O. Box 51015
6                                  Billings, Montana 59105

7

8                           **CONTENTS**

9  Proceedings ..........................................   3

10 Reporter's Certificate ...............................  10

11

12                           **WITNESS**

13 **For the Plaintiff in Rebuttal:**

14 Mr. Stacey Smiedala
        Direct Examination by Ms. Suek .....................   3
15      Cross-Examination by Mr. Pardy .....................   7

16

17

18

19

20

21

22

23

24         REPORTER'S NOTE:  "Uh-huh" and "Um-hmm" indicate
   affirmative responses.  "Huh-uh" and "Hm-umm" indicate
25 negative responses.

                                2

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | EXCERPT OF PROCEEDINGS                                               |
| 2  | (Open court.)                                                        |
| 3  | (Defendant present.)                                                 |
| 4  | (Jury present.)                                                      |
| 5  | MS. SUEK: And the final rebuttal witness is we                       |
| 6  | re-call Special Agent Stacey Smiedala.                               |
| 7  | WHEREUPON,                                                           |
| 8  | MR. STACEY SMIEDALA,                                                 |
| 9  | called for examination in rebuttal by counsel for plaintiff,         |
| 10 | after having been first duly sworn to testify the truth, the         |
| 11 | whole truth, and nothing but the truth, testified as follows:        |
| 12 | DIRECT EXAMINATION                                                   |
| 13 | BY MS. SUEK:                                                         |
| 14 | Q    Sir, in this case, prior to interviewing Rachel                 |
| 15 | Strange Owl, did you review any of the evidence in the case?         |
| 16 | A    No, ma'am, only the electronic communication that I spoke       |
| 17 | of earlier.                                                          |
| 18 | Q    Okay.  And other than that electronic communication, did        |
| 19 | you know about any of the test results or location of the            |
| 20 | evidence or anything about the case?                                 |
| 21 | A    No, ma'am.                                                      |
| 22 | Q    And do you know if you were provided any additional             |
| 23 | information from Special Agent Doug Klein?                           |
| 24 | A    Nothing that wasn't, again, in that electronic                  |
| 25 | communication.                                                       |

| | |
|---|---|
| 1 | Q    How about from Special Agent Wolfgang Hochholdinger?  Did |
| 2 | you talk to him prior to interviewing Rachel Strange Owl? |
| 3 | A    No, ma'am, and until I testified earlier, I wasn't aware |
| 4 | of the fact that he was the case agent prior to Special Agent |
| 5 | Doug Klein. |
| 6 | Q    What about Officer Darrell King?  Did you talk to him? |
| 7 | A    I don't believe I know him. |
| 8 | Q    Did you do a background check or a history of Rachel |
| 9 | Strange Owl before you interviewed her? |
| 10 | A    No. |
| 11 | Q    Did you know anything about her background? |
| 12 | A    No. |
| 13 | Q    What was the purpose of your interview? |
| 14 | A    To find out whether or not she was involved in the |
| 15 | stabbing of Anthony Wolfname in any capacity.  My goal was to |
| 16 | gain further information, if possible; if she had that |
| 17 | information, to obtain that information. |
| 18 | Q    Did you, during the course of that interview, tell her |
| 19 | that you knew all about the evidence?  That she did it?  The |
| 20 | evidence said that she did it? |
| 21 | A    No, ma'am. |
| 22 | Q    Did you tell her that you knew information about her, |
| 23 | specifically about her past relationships? |
| 24 | A    No, ma'am. |
| 25 | Q    Did you tell her that you knew how it happened?  She |

| | |
|---|---|
| 1 | committed involuntary manslaughter?  If she confessed, she |
| 2 | wouldn't spend a day in jail? |
| 3 | A     No, not at all. |
| 4 | Q     Did you tell her that she would go to jail if she did not |
| 5 | admit it? |
| 6 | A     No, ma'am. |
| 7 | Q     Sir, you've talked about alternatives in your direct |
| 8 | testimony that you provided to Ms. Strange Owl, such as you |
| 9 | can murder someone or it might be an accident or self-defense; |
| 10 | is that correct? |
| 11 | A     Yes. |
| 12 | Q     And do you recall talking to her about those |
| 13 | alternatives? |
| 14 | A     Yes.  I did. |
| 15 | Q     How did you do that?  And what I'm getting at is, did you |
| 16 | do it in a way that you told her, "This is how it happened"? |
| 17 | A     No.  That's, again, that's not primarily the way the |
| 18 | technique is taught, anyway, but even disregarding the |
| 19 | technique, once you start interviewing people, I've been doing |
| 20 | interviews for 17 years, and once you start doing that, you |
| 21 | phrase questions in such a way as, Is it possible that this |
| 22 | may have occurred, or, Did this occur?  You give them options. |
| 23 | It's as simple as that.  It doesn't require raising your voice |
| 24 | or attempting to intimidate somebody.  That's more likely on a |
| 25 | television show.  It's more likely to connect with people and |

1     to give them an availability of options, and the person that
2     feels as if they may have some culpability in it is going to
3     grab onto one of those options.
4     Q    Special Agent Smiedala, during the course of your
5     investigation or your interview with Ms. Strange Owl, you did
6     get a statement from her, and you got answers to handwritten
7     questions.
8     A    Yes, I did.
9     Q    You did testify yesterday about an error that you
10    believed she made, and I don't want to test your memory, so
11    regarding the location of the wound?
12    A    Correct.
13    Q    Did you know about any other errors?  And let's follow up
14    with that.  You didn't correct that error?
15    A    Correct.
16    Q    Did you know about any other errors that she had made in
17    her statement or in her answers to your questions?
18    A    No, again, you know, I felt as if she had told me
19    100 percent of the truth.  I believed that when she left the
20    interview, she felt as if, to the best of her recollection,
21    she had told the truth.
22         I can tell you that when people do give statements, and,
23    in this case, it's possible that regarding minute details,
24    particular times, things of that nature, who might have been
25    present, sometimes they do get confused, and if there's drugs

1  or alcohol involved, it's probably likely.  But regarding the
2  bigger issues, whether or not you stabbed someone, those are
3  mistakes that people don't make.
4           MS. SUEK:  No further questions.
5           THE COURT:  Mr. Pardy.
6                    CROSS-EXAMINATION
7  BY MR. PARDY:
8  Q    You wouldn't be surprised to know that back in 2003,
9  three and a half years, I believe, before you interviewed her,
10 that she knew that Tony had been stabbed?  You wouldn't be
11 surprised to think that, would you?
12 A    I'm not sure I understand your question.
13 Q    Talking about minute details and the fact that someone
14 may have stabbed somebody.  You saw her initial 302, correct?
15 It's clear she knew Tony was stabbed as far back as
16 February 23, 2003, correct?
17 A    Correct, and I actually didn't see a 302.  I saw what was
18 on the electronic communication.
19 Q    Okay. Based on that, she clearly knew that back then,
20 right?
21 A    Yes, sir.
22 Q    Okay. You're a good interrogator, aren't you?
23 A    Again, I characterize myself more as an interviewer, sir.
24 Q    Yes, you do.
25      And you talked about the fact that my client, prior to

```
 1  going into your interview, signed a waiver of rights, correct?
 2  A    Yes, sir.
 3           MR. PARDY:  May I approach the witness, Your Honor?
 4           THE COURT:  Yes.
 5  BY MR. PARDY:
 6  Q    (Handing.)  Is that an actual copy of that document?
 7  A    Yes, this is the standard rights advisement.
 8  Q    That's all I wanted.
 9       One more question.  I've circled in blue the title of
10  that document.  What is the title of that document?
11  A    The title of the document given to it by the FBI is
12  "Interrogation:  Advice of Rights," and underneath it, it says
13  "Your Rights."
14           MR. PARDY:  May I approach, Your Honor?
15           THE COURT:  Sure.
16           MR. PARDY:  Thank you.
17           "Interrogation:  Advice of Rights."
18           I have no further questions, Your Honor.
19           MS. SUEK:  No further questions, Your Honor.
20           THE COURT:  You can step down.
21           THE WITNESS:  Yes, sir.
22       (End of requested excerpt, 15:56:55.)
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE

 2              I, JoAnn Corson Bacheller, a Registered Diplomate

 3   Reporter and Certified Realtime Reporter, certify that the

 4   foregoing transcript is a true and correct record of the

 5   proceedings given at the time and place hereinbefore

 6   mentioned; that the proceedings were reported by me in machine

 7   shorthand and thereafter reduced to typewriting using

 8   computer-assisted transcription; that after being reduced to

 9   typewriting, a certified copy of this transcript will be filed

10   electronically with the Court.

11              I further certify that I am not attorney for, nor

12   employed by, nor related to any of the parties or attorneys to

13   this action, nor financially interested in this action.

14              IN WITNESS WHEREOF, I have set my hand at Billings,

15   Montana this 27th day of October, 2009.

16

17                                  /s/ JoAnn Corson Bacheller
                                    _____
18                                  JoAnn Corson Bacheller
                                    United States Court Reporter
19

20

21

22

23

24

25
```